Westmoreland Coal Company v. Stidham. And Mr. Hancock, when you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Thomas Hancock, and along with Paul Frampton, the law firm of Bowles Rice, LLP, we represent Westmoreland Coal Company in this appeal. And this appeal centers on two important issues in the area of federal black lung law. One is the rule-out standard, and the other is the effect that the preamble can have in weighing medical opinions. And this Court's decision in Harmon Mining v. Looney makes it clear that the administrative law judges have the discretion to look to the preamble when they're weighing a doctor's opinion in a federal black lung case. And the question in this case is, is there a limit to that discretion? Can a judge go too far in looking to the preamble? And there has to be a limit, and this Court has to be the one to set that limit. In the situation that we have here, one of the medical doctors in the case who reviewed the evidence, Dr. David Rosenberg, came to the opinion that coal dust was ruled out as a causative factor in the claimant's impairment. And the ALJ recognized in her order that Dr. Rosenberg's opinion was well-received, well-documented. She said that it was persuasive. And Dr. Rosenberg was able to piece together the entirety of the different factors that were specific to Mr. Stidham and compare them to the medical literature that exists in the medical journal articles and in the research that's been done. And based on all of that, Dr. Rosenberg was able to rule out coal mine dust exposure. And despite that, Judge Lakes found that Dr. Rosenberg was not able to rule out coal mine dust exposure. And she used the preamble and the epidemiological studies in the sort of reinterpreting Dr. Rosenberg's report, which very clearly states that he rules out coal mine dust as a causative factor in Mr. Stidham's impairment and explains exactly why and how with specific reference to Mr. Stidham's test results and specific reference to the medical journal articles and the studies that apply to those results. And this is an abuse of the discretion that the Court granted in Looney that the Court talked about in that discretion has went too far. And the way it was applied in this case is exactly what was discussed in the NMA decision in 2002 when the D.C. Circuit was examining the constitutionality of the new definition of legal pneumoconiosis. And in defense of the constitutionality of the new definition of legal pneumoconiosis, the Department of Labor took the position that that definition would never be used to prevent a doctor from looking at an individual claimant and saying this individual claimant's impairment is caused by cigarette smoking rather than coal mine dust. Now, it's well established, and Dr. Rosenberg in his report in this case agrees that coal mine dust can cause COPD, can cause obstructive impairment. But the question he answered was not whether it can cause it in a general sense for people in the population, but whether it caused it in Dr. Rosenberg was able to look at Mr. Stidham's specific test results and go through a number of different factors. And in each instance, the specific test results and specific medical data for Mr. Stidham did not point to a coal mine dust-induced impairment. It pointed to a cigarette-induced impairment. And the reason that this is an issue… Well, I thought under the law that what the physicians would have to testify to was that the coal mine dust neither aggravated nor was a contributing factor in some way to the disease, not that it was the primary cause. That's correct, Your Honor. And the definition… Well, did they do that? Well, Dr. Rosenberg… Either they did or they didn't. He did. He did. He didn't phrase it in quite those exact words. But what Dr. Rosenberg said is that he's able to rule out coal dust as a contributing factor. In essence, he… And he said, now tell me, show me where he says that it is not a contributing factor. Where do we find that in the appendix? Well, Dr. Rosenberg ruled it out as a causative factor in Mr. Stidham's impairment. Right. I understand you're telling me that. What I'm asking you for is to give us a site in the appendix that proves that. Well, Dr. Rosenberg's supplemental report, which is the report where he discussed primarily legal pneumoconiosis, he discusses clinical pneumoconiosis for about a paragraph, is located in the joint appendix. His discussion of Mr. Stidham's specific medical factors, I think, is on joint appendix 164 and 165. On 165, Dr. Rosenberg states that coal mine dust exposure can be ruled out as a cause for Mr. Stidham's disabling obstruction. So he doesn't actually say it's not an aggravating cause or it didn't aggravate it. What he says is that it can be ruled out as a cause. In a way, it's even stronger than what the law requires him to do. And the reason that Dr. Rosenberg was able to do that is because he did what this court has been telling medical doctors they've got to do for years, which is to actually look at the individual medical characteristics of a claimant, look at the medical studies and the journal articles, and do an in-depth analysis. And that's what Dr. Rosenberg did, and that's what appears on pages... His conclusions are at the bottom of 164 and 165 in the joint appendix specific to Mr. Stidham. And if you look back throughout his report, which begins on page 161 of the joint appendix, he has a very in-depth discussion of the different factors that he's looking at and how the analysis that he's providing is supported by the relevant medical literature. And that relevant medical literature includes not only the same epidemiological studies that were relied on by the DOL in drafting the preamble, but also newer studies. And he relied on newer studies that looked at coal mine dust. He relied on newer studies that looked at cigarette smoking. There's a newer study he relied on that looked at both. And he was able to take all of that medical information into account in making his decision. Was there evidence to the contrary, a different expert? There was, and Dr. Forehand's opinion appears at joint appendix page 19, and it's a handwritten report on a Department of Labor form. It doesn't have the type of in-depth analysis of Mr. Stidham's specific medical characteristics that Dr. Rosenberg... I'm just trying to flesh it out where we are on this because this is an interesting issue to some extent. In the instance of the doctors who said that this was caused by cigarette smoking, the determination was made that, well, you say coal dust was a causative factor, but there's nothing in there to support what you've said with the others. But even in our review of this case, aren't we limited to if there was evidence to support this determination? I mean, it could go the other way. I mean, if it wanted to go, but it was determined to go in this particular way based upon evidence that was presented. Unless that evidence was just totally incompetent or useless or irrelevant, then it seems to me we can't ignore the fact that this is the case. Well, Your Honor, I don't know that I would... I don't know of any scientific, even when you're looking at the preamble, I'm not sure there's anything definitively that refutes what's in the preamble in terms of whether you could have coal dust as a causative agent here. Well, I think that according to the studies in the preamble, and actually I think Dr. Rosenberg's report agrees with this, coal mine dust could be a causative factor in anybody who is a former coal miner and a former smoker. But the question that has to be decided in this case... Well, we honor the presumption, I take it. The presumption, we honor the presumption, do you know what I mean? This is a presumption case, that's correct. You are rebutting that presumption. We are. We are. And it's our position that Dr. Rosenberg's report and Dr. Hippenstiel's report rebut the presumption. But the question in this case is not, could coal dust have caused this gentleman's impairment? I mean, the epidemiological studies in the DOL are clear on that. Dr. Rosenberg's report says that coal mine dust can cause COPD. It can cause obstructive impairment. The question is, did it cause Mr. Stidham's obstructive impairment? Did it cause the specific pattern of medical characteristics that Mr. Stidham presents with? And that's a much more complex question, and that's why Dr. Rosenberg has this report where he goes through all these different medical characteristics, where he discusses how those characteristics play into the different medical studies that he cites. And for almost all of those characteristics, he's able to say, this is inconsistent with someone with legal pneumoconiosis. But the DOJ language is that they didn't just explain why. Even if you assume cigarette smoking played the main role, they didn't explain why coal dust could not have played a lesser but nevertheless significant role. Well, that does appear in Judge Lake's opinion. And that's really our main problem with this case, is that she references the epidemiological studies in the preamble and then says he didn't explain why. But when you actually look at Dr. Rosenberg's report, he lists medical factor after medical factor that is inconsistent with legal pneumoconiosis. It's inconsistent with what you see in someone who's a coal miner. It's completely consistent with someone who's a cigarette smoker. And in these cases, a presumption case, as you pointed out, it's our burden to show that the impairment did not arise out of coal mine dust exposure. And if the doctors are not allowed to look at somebody's specific medical characteristics and talk about how those characteristics play into the medical journal articles and the studies, then that's an impossible burden to mount. We can't do it. How should we handle a situation, and I think this may be a hypothetical, I'd rather pose it as a hypothetical, where we have one doctor in a well-reasoned opinion that draws one conclusion and another doctor in a well-reasoned opinion draws an opposing conclusion. What authority in that hypothetical does the ALJ have? Well, I mean, I think, Your Honor, under the Four Circuit's decisions, like Cauley and Cauley-Cole versus Breeding, that the ALJ has to examine the reasoning employed in the medical opinion in light of the objective evidence of the case. And if there's two well-reasoned medical opinions, then they've got to make a decision. Which of those two well-reasoned medical opinions is better supported by the objective evidence, is better supported by more logical reasoning, is better supported by all the medical journal articles and the studies that are out there? And in a lot of these cases, the same studies come up again and again. Dr. Rosenberg cites Atfield and Hodes. Well, the same doctors come up time and time again. Obviously, when you get these cases, each of them has an industry. That's what they do. They come in and they testify for one side or the other, and that's how they make their living. I mean, that's just how these cases have developed. And now that you've got this, the 15-year presumption has been put back in the law, you have an extremely high burden to clear. It is, but I think that in this case we've cleared it. This is a case where Dr. Rosenberg was able to look at all these different medical factors and say this is inconsistent with coal dust, this is inconsistent with coal dust, this is inconsistent with coal dust. And what we have on the other side is opinion from Dr. Forehand, which is handwritten on a DOL form all of three sentences long without a reference to all these same medical journal articles, without the type of analysis that you see in Dr. Rosenberg's opinion. And when you look at what the court has told the ALJs to do with this. What standard are we going to apply here? In other words, the ALJ relied on Forehand's opinion and didn't go with Dr. Rosenberg's opinion, and I think you make a pretty good case that Dr. Rosenberg's opinion looks far more sophisticated, may be accurate, and addresses all this new science that's able to make some distinction between pneumoconiosis and cigarette smoking disease. But the question, I suspect, is how do we tell, I mean she's the one that calls the shot, and we usually reverse her only if something happens, and that's what I'm asking you to tell me what that is. Well, Your Honor, I think that that's something that was decided by this court in 2003 in Colley and Colley, Cole versus Breeding. One of the quotes from that case is that the ALJ has to examine the reasoning employed in medical opinions in light of the objective evidence. And if the ALJ doesn't do that, if she credits Dr. Forehand and says, well, he's more like the epidemiological studies in the preamble, or he says that the effects are additive, or whatever she says, and she doesn't go through these steps, she doesn't look at the reasoning that's employed in his opinion, she doesn't look if it's made in light of the specific objective medical evidence that's specific to Mr. Stidham, if those steps aren't taken, then I think you can overturn what ALJ Lakes did here. And what I would... And what do we say when we overturn it? She didn't adequately examine the detail of the medical reports, is that what we say? Or she didn't adequately analyze them? Yes. I mean, what she did, she failed to actually... Well, I think in a case like this, the appeals courts have always been sort of the rules makers for the lower courts. That's your role. And if this was a case in federal district court, you'd be looking at Dalbert decisions and Kumo decision cases from that line of questioning. You'd be looking at whether or not the expert opinions are scientifically accepted based on peer-reviewed medical articles, reasonable in their methodology. And I think that the same type of analysis has to apply in federal black lung cases. If a judge credits a doctor who writes three handwritten sentences on a piece of paper with no citation of medical articles and says that that's more persuasive or that that's more based on the objective medical evidence than a well-reasoned report, that just can't stand. Okay. We'll hear from Mr. Thompson. No, not Mr. Thompson, Mr. Gilligan. Thank you. I was drafting Mr. Thompson from the next case to come up and do a black lung case. He's prepared for a telephone tower. May it please the court, my name is Ryan Gilligan, and I represent the respondent, Mr. Edward Stidham. Mr. Stidham is a retired coal miner who spent over 29 years employed for Westmoreland Coal working in underground mining operations. He last worked as a brattisman. It's undisputed he suffers from a totally disabling respiratory impairment in the form of chronic obstructive pulmonary disease, and that requires continuous oxygen, supplemental oxygen use. He does have a history of smoking, 15 pack years total. So these facts sound like a lot of other cases we see. I mean, these issues are coming back up and beginning to crescendo to some extent, or at least come to a point. And the issue here concerns the manner in which the ALJ considered the evidence before and addressed the specific intentions of the other side in terms of the nature of that evidence and why we have two experts who it sounds like he almost ruled out that it could be coal dust exposure. Two experts who apparently have some higher degree of certification. How do we deal with that here? Yes, Your Honor. This court reviews Judge Lakes' weighing of the medical opinion evidence to determine whether it's supported by substantial evidence. This court's recently found in Westmoreland Coal v. Cochran that the medical disputes should be settled by the administrative law judge, and that's what the judge did in this case. Westmoreland claims that the administrative law judge took the degree of analysis should we require. The argument is that Mr. Forehand didn't give any of the medical support for his opinion. That is indicated by the record, and that Dr. Rosenberg did go through all the new literature, which over the years is getting better in trying to make this distinction between how coal dust, pneumoconiosis, appears and how emphysema or some other tobacco smoking disease appears. And I gather that's probably based on the nature of the causative substances. Dust is a coarser element than smoke, and so it causes different physiological responses. And apparently Dr. Rosenberg took those into account, and Dr. Forehand didn't. And the complaint is that the ALJ didn't get into that. Yes, Your Honor, and I'd make two points to respond to your question. First, this is a 15-year presumption case, and therefore Westmoreland Coal bears the burden to rebut the presumption of Mr. Stidham's entitlement. Dr. Forehand's opinion in this case fully is favorable to Mr. Stidham. So his analysis in no way supports rebuttal of that presumption. And the second part of the answer is that Dr. Rosenberg's opinion, as the judge recognized, is focused on what is the general pattern of impairment, the general pattern of impairment for a disabled coal miner just disabled by coal mine dust, and what is the general pattern of impairment for someone just disabled by cigarette smoking. So is it going to be sufficient in all these cases, which as the judge indicated we're getting a lot more of these now that the law has changed, is it going to be sufficient for Dr. Forehand to earn his fee by giving us a five-sentence handwritten diagnosis in each one of these cases that I suspect is going to be fairly similar from one to one? Is that enough? Well, Your Honor, I believe the Department of Labor form, when a miner files a case, they're allowed to select a physician and go and have a comprehensive pulmonary evaluation. And the form that Dr. Forehand completed is the form that is supplied by the Department of Labor to do the evaluation. And what he did was fill it out. So while his conclusions are written in the space on that form, the exam is more than just five sentences. He did pulmonary function testing, he did blood gas testing, he did an X-ray, physical exam, he reviewed the miner's history, he has experience in doing these examinations. And I do believe Dr. Forehand had a body of evidence to render a reasoned opinion. What in that evidence indicates that the miner had pneumoconiosis? As distinct from just COPD. Well, Dr. Forehand found two forms of pneumoconiosis, the clinical and the legal form. And in this case, before this Court, we're just talking about the legal form. And I don't think Dr. Forehand is required to specifically apportion. No, but you were pointing to all this evidence. I'm following up, actually, on Judge Agee's question, is we have this fairly sparse opinion by Dr. Forehand where he really doesn't explain how he gets to those conclusions. And your response is, well, he did do quite a bit of analysis and collected a lot of data. And my question is, what data that he collected supports his conclusion that this was not just COPD from cigarette smoking, but rather pneumoconiosis, legal pneumoconiosis? Dr. Forehand rendered an opinion in this case that Mr. Stidham suffered from a severe impairment. And based on reviewing his history of coal dust exposure and his history of smoking, it was Dr. Forehand's opinion that this miner would not be as disabled had he never mined coal. Well, that isn't a medical opinion. That's just relying on the history that he was in a coal mine. I mean, I'm trying to find out what are the medical data that led him to that conclusion. You said he collected quite a bit and reported it there. Well, he found a disabling obstructive impairment. He found a blood gas impairment. He found pneumoconiosis on the chest X-ray. And after reviewing this body – He found it on the X-ray? He found it on the X – What did he find on the X-ray? What did he say he found on the X-ray? I believe he read the X-ray positive for a mild form of clinical pneumoconiosis, but the judge found that the evidence rebutted clinical pneumoconiosis. He calls it coal miner's pneumoconiosis. Right. That's what he says. And the doctor determined, based on his exam, that the miner's impairment was due in part to coal dust. But I would stress that in these presumption cases, it's whether the – in this case, it's whether the opinions of Doctors Hippensteel and Rosenberg rebutted the presumption. And as the judge reasonably found – Well, he clearly rebutted it. The question is now is that there's some weighing going on because he clearly concluded that this man was suffering from COPD unrelated to pneumoconiosis. The doctor did render an opinion that coal dust wasn't causing this miner's impairment, but the judge found it was legally insufficient because the doctor never examined whether there was a joint contribution found in this case. Well, how do you construe the language that your colleague pointed to in the supplement where he ruled out as a cause with medical certainty, ruled out as a cause, a disabling obstruction? Well, I think what happened in this case was the judge looked at the totality of that opinion. And when you look at the doctor's opinion on Joint Appendix 98 and 162, Dr. Rosenberg presented an opinion that coal dust generally causes a specific type of impairment. What makes these cases somewhat more interesting than many of the cases where we have expert testimony is you have an initial stage in which you determine the person, in fact, is an expert, and you determine that you have the proper foundation to render an opinion. Then the opinion is rendered and the opportunity for the various litigants then is to cross-examine and to determine whether there is a basis that supports that opinion. And that happens during the course of it. At the end of the day, an opinion is accepted, and then when it comes here, we don't go looking back to see the whole basis of it because that's basically weighing of it unless there's some evidence to show it is an incompetent opinion. And so what you have here is an expert, Judge Niemeyer posited he clearly rebutted it. He clearly presented evidence that if accepted alone would have rebutted it. But the question here that we are now dealing with and why this gets to be muddled is the science is evolving, but to what extent do we now begin to hold experts to different levels of science that is purportedly evolving or moving, and to what extent has it moved so as to make an opinion that previously would have been competent, incompetent now in light of the science? And that might be too difficult of a question for us to handle on the field. Well, I don't think Dr. Rosenberg specifically, what he did was discuss the general patterns here, and he didn't specifically disagree with anything in the preamble, and in reality, the judge didn't specifically use, it didn't use the preamble to discredit these opinions at all. The judge used the preamble to explain the definition of legal pneumoconiosis and then found that Drs. Hip and Steele and Rosenberg did not discuss whether this impairment could be caused by two factors, coal dust and cigarette smoking. Instead, both physicians rendered an opinion where they concluded, well, coal dust generally causes this pattern of impairment, and cigarette smoking causes generally this pattern of impairment. But in this case, we have a minor with an extensive history of underground coal dust exposure, and half of that would be packier exposure, and they never discussed, well, what's the pattern of impairment if both are causing? How is this minor not one of the general minors? How do we not know that he could have totally disabling chronic obstructive pulmonary disease that doesn't fit this mixed restrictive obstructive impairment when Westmoreland even concedes that coal dust exposure can cause a disabling obstructive impairment? Let me ask you this. The ALJ's analysis of Dr. Rosenberg's opinion is basically to not conclude there's anything wrong with what he said. She basically concludes he didn't go far enough and conclude that pneumoconiosis was not a contributing cause. Isn't that what she said? She said that his discussion of smoking was persuasive, but he never incorporated into his analysis whether he had this contribution. He just went down one road or one path or the other. Yeah, that's what my understanding was. Well, how do we square that conclusion, that analysis of Dr. Rosenberg's opinion, with the portion that's on page 164, 65 of the JA? That's where he rules out as a contributing cause coal miners, a COPD. Not COPD, coal mine dust. And I see my time's up. Oh, please answer. In this case, the judge did more than just look at Dr. Rosenberg's conclusion. She looked at his analysis, and he might have rendered a conclusion that he ruled out coal dust, but his conclusion, when you read the report in entirety. But didn't she conclude otherwise? Didn't she just make a misstatement? I mean, she said he did not address. I thought that was her whole reason. I thought she found him pretty persuasive, but he didn't go and exclude coal miners' dust as a contributing cause. And I thought she just overlooked the supplemental opinion. I don't think she overlooked the supplemental opinion. I think despite Dr. Rosenberg's conclusion, his report does not ever discuss a joint contribution at no point. He's focused on one or the other. Well, he says coal mine dust exposure could be ruled out as a cause for Mr. Stidham's disabling obstruction. That's about as clear as it could be, isn't it? But I think the judge has to make a weighing of the evidence. Well, that's fair enough. And that's why I ask the hypothetical question, if you have two experts, what role do we have? But this question's a little more pointed. And this question is, in the weighing process, did the ALJ commit an error in failing to take in a full count or misconstrued Dr. Rosenberg's opinion? Well, I do believe that it is the judge's role as the fact finder to weigh the evidence. And this court reviews to determine if it's supported by substantial evidence. In this case, Dr. Rosenberg's opinion, as we pointed at numerous points in our brief, it deals in general patterns of impairment without specifically focusing on- Well, would you agree with me that he did address whether coal miner's dust was a contributing cause? I would agree that he- not fully. Dr. Rosenberg only talked- Not fully. He talked about only whether coal dust was the sole cause of this man's impairment. And under the regulatory definition of pneumoconiosis- I understand, but you're taking stuff that's favorable to you. I want you to address the statement where he ruled out any contribution by coal miner's dust. He made that- And how the ALJ addressed that. He made that statement, but the judge acted within her discretion to find that his analysis does not support that conclusion in that the doctor never- Is that what she said? She recognized it but said it's not supported? I think she summarized his opinion and then concluded that he never addressed a joint contribution. Well, what she said was what he did not explain was whether or not he was able to determine that coal mine dust exposure did not contribute to or aggravate the disability. And I guess the question is, when you read the conclusion in Dr. Rosenberg's report, coal mine dust can be ruled out as a cause for Dr. Stidham's disabling obstruction, whether or not the ALJ made a factual error before she got to the weighing part. I do maintain that the judge considered all the evidence in this case and that the evidence does support her determination that he never addressed a contribution, which does not fully address the definition of legal pneumoconiosis and does not overcome the 15- Well, you're stating what she said. We're trying to posit whether she made an error, and you're suggesting she didn't or what? I don't believe she made an error. All right. I suppose it depends on how you read what is here. If you start out with the proposition that a doctor says you can rule out something, rarely do you hear a medical doctor say they rule something out with certainty. Even in the medical malpractice, it is to a reasonable degree of medical certainty, but not certainty. And here is a question of whether this doctor diagnostically can look at a person and make this determination, says I rule out it's not in him, when the preamble on his face say that coal mined dust and cigarette smoking can work together to cause pneumoconiosis. And what she says is they've not said anything or shown us any literature to refute that, and yet they say they ruled it out. So that's the problem you've got. You've got a diagnosis here that says I rule it out in this man. But then you go back and you're stuck with this preamble. No one's saying the preamble's wrong. That's just what it is. I mean, there's all kind of deference and stuff to some degree, maybe not Chevron that you get a preamble. But it is there that it can work together. And they don't give you anything to say you've got the presumption he's been there 15 years, he's been smoking, and they say, oh, it's not that. And that's why it sounds like it's incredulous to this AOJ, because they don't come back and say, oh, yeah, here's why we say this, that it cannot be, even though the preamble says it can cause it together, here's why we say it. It's just we rule it out. We examine him, and it doesn't look like the type, so it's not it. Rarely does a doctor do that. I mean, it's almost incredible a doctor would ever say something cannot be the cause when he's been there 15 years. That's the problem. Well, he was in the mines for 30 years. And that's exactly. Underground, by definition. Well, actually, in the return of the air, building the walls for the air, and that's why I brought it up. It's so important is its exposure. So you get a doctor that says, I examine him, and it cannot be the cold dust. He's been there for 30 years, but the preamble says they can work together. And all she asked for is, tell me what you have that is going to support this opinion that you got, when I've got the other opinion here going the other way. And she's saying it sounds persuasive and everything, but I need something more. Well, the doctor never addressed that joint contribution. By saying this is the pattern of smoking, this is the pattern of cold dust, we overlook the joint contribution. And that's what the judge picked up on. If he finds no pneumoconiosis, clinical or legal, and he says if there is any, a coal mine dust made no contribution. But we've gone over this. Why don't we hear from Mr. Goldberg. Thank you, Your Honor. May it please the Court, my name is Jeff Goldberg, representing the Director, Office of Workers' Compensation Programs. As you know, we did not get involved in the substantial evidence dispute. We addressed the legal issues. And I'm not really sure they remain, based on the reply brief in this argument. In their opening brief, Westmoreland argued that the operator did not have to prove the absence of clinical and legal pneumoconiosis, but only of one. This Court's decision in Barber clearly goes the other way, as does the recently revised regulation at 718.305.D1I, which we 28J'd to the Court. In their opening brief, the operator said that the rule-out standard is incorrect, but did not provide any argument. In the reply brief at page four, we agree the rule-out standard is correct. Finally, regarding the ALJ's use of the preamble, it seems to us she merely used it as boilerplate to explain the nature of legal pneumoconiosis. When she found the opinions from the operator's doctors insufficient, she did not refer to the preamble. She fairly found they failed to explain their opinions. And regarding that, since that seems to be a hot topic here, my take on it is that the ALJ found that while the doctor's conclusions, the final statement, ruled out any contribution. The analysis was more prone to whether pneumoconiosis was a sole cause, but did not address how they might work in combination. As an analogy, blue and red make purple. But if it's 95% red and 5% blue, it doesn't make purple, but blue is still a contributor to whatever that end result is. Do you have nothing else? Thank you, Mr. Coleman. Thank you. Mr. Hancock. Thank you, Your Honor. The first thing I want to address is this suggestion that Dr. Rosenberg never looked at whether or not there could have been some kind of combined effect. In his deposition, Dr. Rosenberg was asked, so even if you assume that Mr. Stidham has a mild degree of clinical pneumoconiosis, you do not believe that any coal mine dust exposure has contributed to his totally disabling pulmonary impairment. And Dr. Rosenberg said that is correct. He did address the possibility of a combined impairment, and based on the specific medical characteristics of Mr. Stidham, he ruled it out. I also want to address this. My colleague says that conclusion there just sort of stands isolated, and the doctor didn't explain why he reached that conclusion when the man had been in the mines for 29 years. Well, the epidemiological literature, including the literature that's cited in the preamble, shows that not every coal miner, no matter how long they work, not every coal miner gets coal worker's pneumoconiosis, whether you're talking about clinical or legal. A hundred percent of people that retire from the mines with that many years of service, they don't all get the disease. And likewise, a hundred percent of people that smoke cigarettes don't get disease from smoking cigarettes. So when you have a case like this where you're dealing with both causative factors, the doctors have to be able to look at the specific medical findings of the claimant and go through each one and determine are these findings that are consistent with coal dust, are they findings that are consistent with cigarette smoking, are they findings that are consistent with both? If they're findings that are consistent with both, you're not going to be able to rule out coal mine dust as a etiological factor. But in this case, Dr. Rosenberg was able to do that, and he was able to do that based on the analysis that appears at the bottom of Joint Appendix 164, where he's going through all the different factors and saying this is inconsistent with legal pneumoconiosis, this is inconsistent with legal pneumoconiosis, this is not the type of impairment you would expect to see in someone that worked in the coal mines. It is, in fact, the type of impairment that you want to see, that you would expect to see with someone who's a longtime smoker. The other point I wanted to make in regard to the defense of Dr. Forehand's opinion, which was basically that this is the DOL form and he filled out the DOL form, Mr. Stidham could have got another report from Dr. Forehand. They could have taken Dr. Forehand's deposition. Mr. Stidham could have went out and found other medical doctors to testify on his behalf in this case, and that didn't happen. Dr. Forehand is essentially the only – Well, the ALJ found it reasoned, sufficiently reasoned, and as she did, I think the ALJ was impressed by all of the medical reports and then explained why she was picking, relying on Forehand's, right? Well, I think that the ALJ's reliance on Dr. Forehand's report was an error because Dr. Forehand's report is not based on the objective medical data. In fact, the data that Dr. Forehand collected was the exact data that Dr. Rosenberg relied on in his report to show that coal mine dust could be ruled out as a causative factor. Well, is it sufficient to meet the sufficient evidence test that the condition, the coal dust aggravates the pneumoconiosis as opposed to causing it? Is that sufficient that it's an aggravating factor, not necessarily a cause? Well, the word aggravating is part of the definition of legal pneumoconiosis in 20 CFR 718-201, and so I think that you can look at that, but in my opinion, did it – If you can look at aggravate, then that's what the ALJ says, that Dr. Rosenberg did not say that it wasn't an – it wasn't a – and that he did not render an opinion as to the aggravation factor as opposed to causation factor. Well, Dr. Rosenberg in his deposition stated that he was asked if coal mine dust exposure contributed to the impairment at all, and he said no. I would take that to mean that it didn't aggravate it if it didn't contribute to it. And if those two words are – mean different things, it's news to me. Well, hold it. Causing a disability jointly or alone is quite different than aggravating, isn't it? It may not have been caused – it may have all been caused by a smoking, but I gather the statute allows recovery if the coal dust aggravated that condition that was caused by smoking. Well, another thing that Dr. Rosenberg – Am I correct on that? I think that I can address it from a different angle. And another thing that Dr. Rosenberg said in his deposition, he was asked if Mr. Stidham had never worked a day in the mines, would you expect his clinical presentation, his medical characteristics to be any different? Never worked a day in the mines, but had smoked cigarettes for the numbers of years that he smoked cigarettes. And Dr. Rosenberg said yes, they would be exactly the same if he had never worked a day in the mines. And, again, that's based on – Well, you say that implies the notion that the dust didn't aggravate. I think that that is an opinion by Dr. Rosenberg, that the dust did not aggravate. A little thinner. All right, thank you, Mr. Hancock. We'll come back and re-counsel and proceed on to the next case. Thank you.
judges: Paul V. Niemeyer, G. Steven Agee, James A. Wynn, Jr.